IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

SAIFULLAH ANJUM RANJHA )
)
Petitioner, )
)
v. ) 1:11cv131 (LMB/TRJ)
)
DEPARTMENT OF HOMELAND )
SECURITY, et al., )
)
Respondents. )

## MEMORANDUM OPINION

Before the Court is a Motion to Dismiss [Dkt. No. 3] filed by respondents, in which the Department of Homeland Security and the United States Citizenship and Immigration Services ("USCIS") ask this Court to dismiss Ranjha's petition seeking adjudication of his naturalization application on grounds of mootness, res judicata, failure to state a claim, and lack of subject matter jurisdiction. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before us, and argument would not aid the decisional process. For the reasons stated below, respondents' Motion to Dismiss will be granted and Ranjha's petition will be dismissed by an Order to be issued with this Memorandum Opinion.

### I. Background

Petitioner Saifullah Anjum Ranjha is an alien who is currently serving a 110-month sentence in federal custody after pleading guilty in the United States District Court for the District of Maryland to one count of money laundering, in violation of 18

U.S.C. § 1956(h), and one count of concealment of terrorist financing, in violation of 18 U.S.C. § 2339C(c)(1)(A). Ranjha, proceeding pro se, has filed a Petition for Hearing on Naturalization Application, Public Ceremony, and Expedited [] Oath Administration Ceremony . . . and Hearing and Review of Denial of Naturalization Application ("Petition for Hearing"), in which he seeks an order of this Court compelling the USCIS to adjudicate his naturalization application, or, alternatively, a hearing and judicial review of the USCIS's denial of the same.

Petitioner is a native and citizen of Pakistan who became a lawful permanent resident of the United States in September 1997. See Pet. for Hr'g [Dkt. No. 1] ¶ 4. He filed an N-400 petition with the USCIS on September 16, 2002, seeking to become a naturalized United States citizen, and USCIS officials interviewed him with respect to that naturalization application on October 28, 2003. Id. ¶¶ 2, 6. At that time, USCIS officials initially stamped Ranjha's application as "approved" and invited him to attend an oath ceremony scheduled for February 10, 2004. Id. ¶¶ 11-12. However, on January 27, 2004, the agency notified Ranjha that his oath invitation had been withdrawn; the withdrawal was the result of the initiation of a criminal investigation against petitioner. See id. ¶¶ 13-14.

On July 9, 2007, Ranjha, by and through his then-counsel, filed a civil action in this Court styled as a "Petition for Hearing on Naturalization Application." See Ranjha v. Dep't of

2

Homeland Security, No. 1:07cv664 (E.D. Va.) (Brinkema, J.). In his original petition, Ranjha raised the same or similar factual allegations to those in his instant petition, and, invoking 8 U.S.C. § 1447(b), asked the Court to "adjudicate [his] application for naturalization or, in the alternative, to compel [the USCIS] to rule upon the application for naturalization duly filed by the Petitioner on September 16, 2002." See Resps.' Mot. to Dismiss at Ex. A, ¶¶ 1, 16-18 (Ranjha's July 9, 2007 Petition for Hearing on Naturalization Application).[1]

During the pendency of Ranjha's first naturalization action in this Court, a federal grand jury sitting in the District of Maryland returned a second superseding indictment in August 2007 charging petitioner with violations of 18 U.S.C. § 1956(h) (money laundering) and 18 U.S.C. § 2339C(c)(1)(A) (concealment of terrorist financing). See Resps.' Mot. to Dismiss at Ex. B (Criminal Docket, United States v. Ranjha et al., No. 1:07cr239-MJG, at Dkt. No. 15). More specifically, the government alleged that Ranjha had conspired with others to launder over $2.2 million

---

[1] Although courts are typically required to look only to the facts alleged in the plaintiff's Complaint when resolving a motion to dismiss, it is well established that the Court is entitled to look beyond the four corners of a complaint or petition when adjudicating a motion to dismiss for lack of jurisdiction or addressing res judicata issues. See Williams v. United States, 50 F.3d 299, 304 (4th Cir. 1995) (allowing courts to consider additional evidence when resolving a motion to dismiss under Federal Rule 12(b)(1)); see also Q Int'l Courier v. Smoak, 441 F.3d 214, 216 (4th Cir. 2006) ("[A] court may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issues of fact.").

3

in the course of operating a money remitting business in Washington, D.C. and overseas. That money was alleged to be the proceeds of illegal drug trafficking, trafficking in contraband cigarettes, and terrorist financing; in particular, Ranjha was alleged to have laundered money from October 2003 through August 2007 that he believed was to be used by the global terrorist organization al Qaeda. Id.; see also id. at Ex. C ¶ 3.

In light of those serious criminal charges, the parties in Ranjha's original naturalization action executed a consent order, which this Court entered on October 10, 2007, in which Ranjha's first naturalization petition was dismissed and the matter was remanded to the USCIS "for an adjudication following the completion of the criminal proceedings in United States v. Saifullah Anjum Ranjha et al., Criminal No. MJG-07-0239, U.S. District Court for the District of Maryland." See Resps.' Mot. to Dismiss at Ex. C (October 10, 2007 Order). On August 22, 2008, Ranjha pled guilty to two counts of the second superseding indictment, including the charge of concealment of terrorist financing. See Pet. for Hr'g ¶ 25; see also Resps.' Mot. to Dismiss at Ex. B (Dkt. No. 147). On November 7, 2008, the Honorable Marvin J. Garbis of the United States District Court for the District of Maryland sentenced Ranjha to 110 and 63 months of incarceration on the two counts of his conviction, with the two terms to run concurrently. Id. Ranjha claims that he subsequently filed a motion pursuant to 28 U.S.C. § 2255, seeking

relief from his conviction and/or sentence, but that motion was denied. See Pet. for Hr'g ¶¶ 26-27.[2]

In the wake of Ranjha's criminal convictions, and in accordance with this Court's October 10, 2007 Order, the USCIS adjudicated petitioner's application for naturalization. On March 4, 2009, the agency issued a three-page written opinion denying Ranjha's application, citing his clear violation of the "[r]equirement of good moral character during the statutory period," as set forth in 8 U.S.C. § 1427 and 8 C.F.R. § 316.10. See Resps.' Mot. to Dismiss at Ex. D (USCIS Decision on Application for Naturalization, dated March 4, 2009). Specifically, the USCIS concluded that petitioner's convictions of an "aggravated felony and crimes involving moral turpitude" rendered him ineligible for naturalization as a United States citizen. Id. at 2 (citing 8 U.S.C. §§ 1101(a)(43)(D); (a)(48)(A); and 8 U.S.C. § 1427).

On February 7, 2011, Ranjha, proceeding pro se, filed the instant petition, his second civil action in this Court relating to his unsuccessful application for naturalization. In his current Petition for Hearing, as in his first petition filed in 2007, Ranjha again names the USCIS and the Department of Homeland Security as respondents and asks this Court to:

---

[2] Petitioner further claims that an appeal of that denial remains pending in the United States Court of Appeals for the Fourth Circuit, but he has not submitted proper documentation to that effect.

> (1) Adjudicate [his] application for Naturalization,
>
> (2) Grant an Expedited Judicial Oath Administration Ceremony
>
> OR, in the alternative,
>
> (1) Remand the application to the Bureau of Citizenship and Immigration Services for immediate Adjudication, schedule/reschedule Petitioner for a Public Oath Ceremony for the Oath of Renunciation and allegiance, OR, as appropriate,
>
> (2) Compel Attorney General [sic] to provide with Immediate Administrative Naturalization. AND, [sic]
>
> compel defendants to officially inform petitioner of the true status of his naturalization application (N-400).

Pet. for Hr'g at 28-29.

On April 8, 2011, respondents filed their Motion to Dismiss [Dkt. No. 3], arguing that petitioner's claims are moot, are barred by the principles of res judicata, and fail to state a plausible claim to relief. Because petitioner is proceeding pro se, the government properly provided him with a Roseboro notice pursuant to Local Rule 7(J) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and on April 25, 2011, petitioner timely filed his response, along with an "Addendum" to his original petition. See Dkt. No. 7 ("Addendum to Petition for Hearing on Naturalization Application, Public Ceremony, and Expedited Judicial Oath Administrative Ceremony for Oath of Renunciation and Allegiance for Admission to Citizenship").

On May 10, 2011, Ranjha also filed another document with the Court, which was docketed as an "Amended Petition." See Dkt. No.

9. It is somewhat unclear, however, whether Ranjha is raising any new substantive claims in that petition or simply reiterating and clarifying his original arguments. In either event, Ranjha's Amended Petition contains the same implausible and procedurally defective claims as his original Petition for Hearing. Accordingly, the matter is now ripe for decision on respondents' Motion to Dismiss.[3]

## II. Standard of Review

Under Fed. R. Civ. P. 12(b)(6), a complaint should not be dismissed "unless it appears certain that [plaintiff] can prove no set of facts that would support his claim and would entitle him to relief." Smith v. Sydnor, 184 F.3d 356, 361 (4th Cir. 1999). The Court must accept all of the complaint's well-pleaded allegations as true and view them in the light most favorable to the plaintiff. Smith, 1184 F.3d at 361. However, that requirement applies only to facts, not to legal conclusions. Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). In addition, "if the well-pled facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - that the pleader is entitled to relief. Id. at

---

[3] Although the filing of an amended complaint typically moots a pending motion to dismiss, that general rule can give way in the interest of judicial efficiency, and "[i]f some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading." 6 Charles Alan Wright et al., Federal Practice & Procedure § 1476 (2d ed 1990).

7

1950. "Factual allegations must be enough to raise a right of relief above the speculative level, on the assumption that all of the allegations in the complaint are true." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Moreover, under Fed. R. Civ. P. 12(b)(1), the plaintiff bears the burden of persuasion to establish subject matter jurisdiction, and must prove by a preponderance of the evidence that jurisdiction is proper in federal court. See, e.g., Stawn v. AT&T Mobility, 530 F.3d 293, 296 (4th Cir. 2008); Jones v. Am. Postal Workers Union, 192 F.3d 417 (4th Cir. 1999). The district courts of the United States are courts of limited subject matter jurisdiction, possessing only the jurisdiction granted to them by the United States Constitution and by federal statutes. Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005); Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Accordingly, when a district court lacks subject matter jurisdiction over an action, the action must be dismissed. Arbaugh v. Y & H Corp., 546 U.S. 500, 506-07 (2006). In determining whether it has subject matter jurisdiction, a court may consider materials outside the pleadings, hold evidentiary hearings, and weigh the evidence. Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999); see also Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999).

## III. Discussion

For a variety of reasons, Ranjha is not entitled to any of the relief that he seeks in the various petitions, addenda, and amended petitions that he has filed with the Court. Accordingly, respondents' Motion to Dismiss [Dkt. No. 3] will be granted and this civil action will be dismissed.

### A. Mootness

First, to the extent that Ranjha seeks an order of this Court adjudicating his naturalization application or compelling the USCIS to adjudicate his naturalization application, that request will be denied as moot. It is a matter of black-letter law that a "case or controversy" no longer exists and an action must be dismissed as moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome," such that the Court can no longer provide the parties with effective relief. Powell v. McCormack, 395 U.S. 486, 496 (1969); see also Mellen v. Bunting, 327 F.3d 355, 363-64 (4th Cir. 2003); Esposito v. S.C. Coastal Comm'n, 939 F.2d 165, 171 (4th Cir. 1991).

In actions brought under 8 U.S.C. § 1447(b) to compel a decision on a naturalization application after an unreasonable delay, the only effective relief that a court can provide is a decision on the application itself. As such, once the USCIS has issued a final decision on an alien's application, there is no

longer any continuing injury for a court to redress. See, e.g., Bello-Camp v. Attorney General, 2009 WL 813146, at *7 (M.D. Fla. Mar. 26, 2009) (holding that when the USCIS has already rendered a final decision, "[a]ny possible remedy under [8 U.S.C. § 1447(b)] has already been achieved"). In this case, the USCIS has already adjudicated - and denied - Ranjha's naturalization application, meaning that his § 1447(b) claim is now moot.[4]

### B. Res judicata and failure to state a claim

Next, to the extent that Ranjha asks this Court to treat the USCIS's 2003 "approval stamp" on his application as dispositive of his entitlement to naturalization, that argument is both barred by the doctrine of res judicata and fails to state a plausible entitlement to legal relief. First, Ranjha pursued nearly identical arguments in his earlier naturalization petition, filed in July 2007. See Resps.' Mot. to Dismiss at Ex. A. That petition sought the same relief, before this very same Court, and revolved around the same transaction or occurrence as the instant

---

[4] The Fourth Circuit's decision in Etape v. Chertoff, 497 F.3d 379 (4th Cir. 2007) does not in any way undermine this holding. Etape simply held that "a proper § 1447(b) petition vests the district court with exclusive jurisdiction *unless and until* the court remands the matter to the [US]CIS." Id. at 383 (emphasis added). Here, this Court remanded Ranjha's original naturalization petition to the USCIS by an Order issued in October 2007, directing the agency to issue a final decision on Ranjha's application at the conclusion of the criminal proceedings against him. The USCIS therefore regained full jurisdiction to adjudicate petitioner's naturalization application, and the denial of that application in March 2009 effectively mooted Ranjha's § 1447(b) claim.

case - namely, Ranjha's September 16, 2002 application for naturalization. Id. Yet this Court rejected Ranjha's arguments and ultimately entered a final Order dismissing the 2007 petition, remanding the action back to the USCIS, and authorizing the agency to render its own final decision on petitioner's application. See id. at Ex. C.[5] Principles of claim preclusion therefore bar reconsideration of Ranjha's argument that the preliminary "approval stamp" on his application should be regarded as conclusive proof of his entitlement to citizenship. See In re Varat Enters., Inc., 81 F.3d 1310, 1315 (4th Cir. 1996) (explaining principles of claim preclusion); see also Orca Yachts, LLC v. Mollicam, Inc., 287 F.3d 316, 318 (4th Cir. 2002).

Moreover, even if that argument were properly before the Court, it is incorrect as a matter of law. USCIS regulations clearly authorize the agency to withhold the oath of citizenship from any alien "whose application has already been granted" if the government "receives derogatory information" concerning the alien

---

[5] In fact, that October 2007 Order was a consent order, to which all parties, including Ranjha, explicitly agreed. Petitioner now alleges that his prior counsel did not properly obtain his consent before entering into that agreement to seek remand, see Pet. for Hr'g ¶ 20, but he has presented no proof in support of that allegation, and as a matter of law, he is bound by the conduct of his chosen counsel. See Link v. Wabash R.R. Co., 370 U.S. 626, 633-34 (1962) ("Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent."). As such, if Ranjha's claims are true, they may at best establish the basis for a possible malpractice action against his former attorney, but they do not undermine the preclusive effect of this Court's prior dismissal.

in the time between approval of the application and administration of the oath. 8 C.F.R. § 335.5. In other words, it is the *oath* that completes the act of naturalization, not the approval of an N-400 application, and until the moment that an alien takes the oath, the USCIS may revisit its earlier determination and even revoke its approval in light of new evidence made available about that alien. See Ajlani v. Chertoff, 545 F.3d 229, 234 (2d Cir. 2008) (quoting 8 C.F.R. § 335.5) ("The grant of an application for naturalization is not determinative of citizenship. An alien who has not taken the oath in a public ceremony remains a non-citizen. The statute's implementing regulations similarly identify the taking of a public oath as a prerequisite for naturalization . . . and specifically provide that, when USCIS receives 'derogatory information concerning an applicant . . ., the Service shall remove the applicant's name from any list of granted applications.'").

In this case, Ranjha pled guilty to two counts of money laundering and concealment of terrorist financing, in violation of federal law. In so doing, he admitted to facilitating the laundering of over two million dollars in illegal drug proceeds, much of which he either knew or believed was to be used by al Qaeda, a terrorist organization responsible for the brutal and senseless murders of thousands of American citizens. It is difficult to imagine a clearer example of the sort of "derogatory information" that would justify the USCIS in revoking the approval

of an alien's naturalization application. Put simply, aliens who provide support - financial or otherwise - for efforts to attack the United States have no valid claim to becoming United States citizens. Accordingly, the USCIS had full authority under 8 C.F.R. § 335.5 to withdraw its approval of Ranjha's application before he took the oath of citizenship. Without having taken that oath, Ranjha never became a United States citizen. Petitioner's argument that the 2003 "approval stamp" on his application somehow confers citizenship upon him therefore fails to state a plausible claim to legal relief.

### C. Lack of subject matter jurisdiction

Finally, petitioner suggests in his opposition to respondents' Motion to Dismiss, and in the various supplemental materials that he has filed with this Court, that the Court should provide a "review hearing" and undertake its own analysis of the merits of the USCIS's denial of his naturalization application. See, e.g., Dkt. No. 7 (Ranjha's "Addendum" to his Petition for Hearing) at 2. The central problem with that argument, however, is that this Court lacks subject matter jurisdiction to review the merits of the USCIS's determination because petitioner did not properly exhaust his administrative remedies.

Under 8 U.S.C. § 1421(c), "[a] person whose application for naturalization . . . is denied . . . may seek review of such denial before the United States District Court for the district in which such person resides," but only "after a hearing before an

13

immigration officer under § 1447(a) of this Title." 8 U.S.C. § 1421(c). As courts have consistently held, "[§] 1421(c) . . . requires the exhaustion of administrative remedies prior to seeking [] relief" in federal court; that "requirement is 'mandatory, and courts are not free to dispense with it.'" Escaler v. USCIS, 582 F.3d 288, 292 (2d Cir. 2009) (quoting Bastek v. Fed. Crop Ins. Co., 145 F.3d 90, 94 (2d Cir. 1998); see also Aparicio v. Blakeway, 302 F.3d 437, 446 (5th Cir. 2002). This exhaustion requirement serves as a limitation on Congress's waiver of the federal government's sovereign immunity in actions challenging the denial of naturalization, and as such, an alien's failure to exhaust the mandatory administrative appeal process deprives a federal district court of jurisdiction to review a naturalization denial. See, e.g., Karam v. USCIS, 373 Fed. Appx. 956, 958 (11th Cir. 2010); Idahosa v. BICE, 111 Fed. Appx. 293, 294 (5th Cir. 2004).

Here, Ranjha concedes that he has not yet noticed, let alone litigated to completion, an administrative appeal of the USCIS's denial of his naturalization application. Indeed, Ranjha argues that before the filing of respondents' Motion to Dismiss, he was unaware that the USCIS had even denied his application. See Dkt. No. 7 ("Addendum") at 2.[6] Accordingly, this Court clearly lacks

---

[6] Ranjha faults the USCIS for not transmitting the denial letter to his current prison address, but the exhibits to Ranjha's own petition reveal that the USCIS repeatedly advised Ranjha that he needed to inform the agency of any change of

14

subject matter jurisdiction at this time to undertake its own examination of the merits of the agency's denial of citizenship or to provide the "review hearing" requested in Ranjha's supplemental filings.

## IV. Conclusion

For all these reasons, respondents' Motion to Dismiss [Dkt. No. 3] will be granted and this civil action will be dismissed by an Order to be issued with this Memorandum Opinion.

Entered this 7th day of June, 2011.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge

---

address, see Pet. for Hr'g at Ex. A, and it appears that Ranjha simply failed to do so. In any event, the USCIS has indicated to the Court that, in the interests of fairness and justice, it has re-served Ranjha with a copy of its initial denial decision at his correct address, thereby providing Ranjha with a new 30-day period within which to take an administrative appeal under 8 C.F.R. § 336.2(a). See Reply Mem. of Law in Supp. of Resps.' Mot. to Dismiss at 7 n.7.